IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| NATIONAL FEDERATION OF THE | § | |
| BLIND OF TEXAS, AUNDREA MOORE, | § | |
| NEVZAT ADIL, | § | |
| DEMETRIUS KOUNIARIS, and | § | |
| JEANINE LINEBACK, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:16-cv-001082 |
| | § | |
| RIDE FARE, LLC, | § | |
| *Defendant.* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

### INTRODUCTION

1.     Defendant Ride Fare, LLC, a "ride hailing" transportation provider in Austin, Texas, discriminates against blind individuals by refusing to make its mobile phone apps accessible to them.  This failure violates federal and state law.  This action, brought by the National Federation of the Blind of Texas and by various individuals with visual impairments, seeks to put an end to Fare's systemic civil rights violations so that blind travelers may patronize the transportation services that defendant offers to others.

### JURISDICTION AND VENUE

2.     This Court has jurisdiction to hear and decide Plaintiff's ADA claims pursuant to 28 U.S.C. § 1331 (federal question) and § 2201 (civil rights).  This Court also has supplemental jurisdiction to hear Plaintiff's state-law claims under 28 U.S.C. § 1367(a).

3.     Venue for this action is proper in this Court under 28 U.S.C. § 1391(b)(2) and (c)(2), because the claims arose in this District, and because Defendant conducts business in this District.

**PARTIES**

4.      Plaintiff National Federation of the Blind of Texas (hereafter "NFBTX") is a duly organized nonprofit association of blind Texans.  It is the Texas state affiliate of the National Federation of the Blind.  The NFBTX's mission is to promote the vocational, cultural, and social advancement of the blind; to achieve the integration of the blind into society on a basis of equality with the sighted; and to take any other action which will improve the overall condition and standard of living of the blind.  Reliable access to modern, publicly available transportation services such as Fare is critical to the NFBTX and its members.  Securing access to the Fare taxi service advances the NFBTX's goal to promote integration of the blind into society on a basis of equality by enabling blind individuals to travel in the same way that many sighted individuals travel.  Fare is currently inaccessible to blind users.  The NFBTX sues on behalf of its members who have downloaded Fare and have been unable to access it due to unlawful discrimination against blind individuals, and also members who have been deterred from using the Fare service due to unlawful discrimination against blind individuals.  NFBTX also sues in furtherance of its extensive efforts and expenditure of resources in advancing its mission to improve independence of the blind.  Securing access to Fare's services advances this mission because access to Fare enables blind individuals to travel more independently, including to travel to NFBTX events. Thus, discrimination against members of NFBTX and other blind individuals frustrates this mission of the NFBTX and results in the diversion of its resources to address Defendant's discriminatory practices.

5.      Plaintiff Aundrea Moore is blind, is a member of the NFBTX, and currently resides in Austin, Texas.  Ms. Moore is retired from a career at the Texas Attorney General's office.   Ms. Moore regularly travels and regularly uses taxis in Austin for personal

transportation.  Though Ms. Moore would like to use the Fare transportation service, she is deterred from signing up for and attempting to use Fare's transportation services because of the discrimination that other blind users have experienced when attempting to use Fare's mobile software application.  Ms. Moore owns and regularly uses an iPhone capable of running the Fare iOS application, and Ms. Moore has a credit card that she could use to pay for the Fare transportation service.

6.      Plaintiff Nevzat Adil is blind, is a member of the NFBTX, and currently resides in Austin, Texas.  Mr. Adil is retired, and regularly travels and regularly uses taxis in Austin for personal transportation. Though Mr. Adil would like to use the Fare transportation service, he is deterred from signing up for and attempting to use Fare's transportation services because of the discrimination that other blind users have experienced when attempting to use Fare's mobile phone software application.  Mr. Adil owns and regularly uses an iPhone capable of running the Fare iOS application, and Mr. Adil has a credit card that he could use to pay for the Fare service.

7.      Plaintiff Demetrius Kouniaris is blind, and is a student living in Austin, Texas. He is also a member of the NFBTX.  Mr. Kouniaris regularly travels and regularly uses taxis in Austin for personal transportation.  Mr. Kouniaris wishes to use Fare's transportation services, and he owns and regularly uses an iPhone mobile device capable of running the Fare iOS application.  He also has a credit card that he could use to pay for the Fare transportation service. Mr. Kouniaris downloaded the Fare software application and attempted to use it, but he was unable to use Fare's mobile-device application to schedule a ride because he was unable to move past the request a ride screen.

8.      Plaintiff Jeanine Lineback is blind and is a senior accessibility consultant in Austin, Texas.  She is a member of the NFBTX, and currently serves as the President of its

Austin Chapter.  Ms. Lineback regularly travels and regularly uses taxis in Austin for personal transportation.  Ms. Lineback wishes to use Fare's transportation services, and she owns and regularly uses both an Android and iPhone mobile device capable of running the Fare iOS and Android application.  She also has a credit card that she could use to pay for the Fare transportation service.  Ms. Lineback downloaded the Fare software application and attempted to use it, but was unable to do so because Fare had not correctly labeled and coded its software application.

9.     The term "Plaintiffs" used in this complaint means both NFBTX, on behalf of itself and its members who have attempted to use or are deterred from using the Fare taxi service because of discrimination against blind persons, and the individual plaintiffs described above, unless otherwise indicated.

10.     Defendant Ride Fare, LLC (hereafter "Fare") is a for-profit transportation network company operating in Austin, Texas.  It provides transportation services through hundreds of vehicles in Austin, Texas.  Fare uses mobile phone software applications to arrange rides between passengers and its fleet of drivers in much the same way that a taxi dispatch arranges rides for customers.  Fare uses its own mobile-phone software application to arrange for these rides.  Fare can be served with process by serving its registered agent, National Registered Agents, Inc., at 1999 Bryan Street, Ste. 900, Dallas, Texas 75201.

**FACTUAL ALLEGATIONS**

11.     Fare provides taxi and transportation services to members of the general public in Phoenix, Arizona and Austin, Texas.  Fare offers its service to sighted individuals in Austin, Texas. Fare is highly cost-effective and widely available in Austin, Texas, and it became one of

the primary taxi services in Austin when two other prominent taxi services ceased operations in Austin in May 2016.

12.    Fare uses mobile-device software applications to arrange rides between passengers and its fleet of Fare drivers in much the same way that a taxi dispatch arranges rides for customers.  To use Fare taxi services, a customer must create a user account, and the customer must provide Fare with his or her phone number, credit card information, and email address.  Fare has developed mobile software applications for iPhones and Android devices that customers use to request transportation from Fare.

13.    To use the Fare taxi service, a customer submits a ride request through Fare's mobile software applications.  Fare identifies the vehicle that will provide the customer with taxi service, and notifies the customer of the driver's information through its mobile-device application.  Fare's mobile application allows customers to track the Fare vehicle's location as the driver navigates to the customer.  The customer may also submit his or her trip destination through Fare's mobile application.

14.    Fare controls who may use the Fare taxi service.  Fare makes the Fare service available only to members of the public who have a credit card and a mobile device that can run its mobile applications, who create a Fare account, and who request a ride through Fare's mobile application.  Customers cannot access the Fare taxi service by physically hailing a Fare vehicle on the street.

15.    Many blind individuals, including members of Plaintiff NFBTX, use text-to-speech software.  Text-to-speech software is commonly used by persons who are blind or visually impaired and it enables blind persons to operate mobile devices by translating visual

information and text displayed on the phone into audible synthesized speech or into Braille on a portable electronic braille display.

16.     Fare does not allow users who are blind and who use text-to-speech software to access its mobile device software application because it does not have a mobile device software application that is accessible to blind users who use text-to-speech software.

17.     Members of NFBTX and other blind individuals would like to use Fare's service but have been deterred from downloading the software application because the software application is inaccessible to text-to-speech technology.  Text-to-speech technology is built into iPhones.  Text-to-speech software, commonly used by persons who are blind or visually impaired, enables blind persons to operate mobile devices by translating visual information and text displayed on a touchscreen device into audible synthesized speech or into Braille on a portable electronic braille display.

18.     Companies like Apple and Google have already done part of the work to assist app developers in making their apps accessible, by publishing accessibility guidelines.  These show how to correctly identify and code the data fields in software applications in a way that enables the text-to-speech software to "read" the information to blind users.

19.     It is not difficult for a mobile developer to properly code a mobile app so that it is accessible in accordance with the Apple and Google accessibility guidelines.  In fact, most controls and elements are accessible by default in the programming environment.  A developer must stray from common functionality to develop an inaccessible mobile app.  Many small companies, including mobile app developers consisting of a single owner/programmer, are able to maintain accessibility of their mobile apps.  Further, other competing taxi services of similar

size to Defendant that are operating in Austin have incorporated accessibility into their mobile apps.

20.     The Request a Ride screen on Fare has two empty fields on the top of the page. The two fields are "pickup location" and dropoff location."  Fare has correctly labeled and coded the data fields for pick-up location and drop-off location and the text-to-speech technology can read them.  The text-to-speech user can input both her pick-up and drop-off location.

21.     After entering these locations, the user clicks to the next button.  On the screen, two buttons appear at the bottom of the screen, "ride now" and "ride later."  A sighted user would see that these two buttons are to select whether to ride now or ride later, but blind users using text-to-speech technology cannot access these buttons because Fare has not coded and labeled them correctly.  When the text-to-speech software clicks on the "ride later" button, the audio reads, "schedule trip."  In fact, this button is only used to schedule a trip at a later date so this button is confusing to a blind user who wants to schedule an immediate trip.

22.     At the very bottom of the Request a Ride screen, sighted users will see three buttons to select the type of vehicle.  These buttons are Standard, Premium, and SUV.  However, for a blind text-to-speech user, Fare has labeled and coded these buttons incorrectly to read, "Car Button CV, Button."  A text-to-speech user who is unable to see these buttons will have no way of knowing what "Car Button, CV, Button" means.  Fare's labeling and coding does not provide sufficient information to the text-to-speech user to determine the function of these buttons.

23.     Fare's payment page is also inaccessible.  The payment method screen shows sighted users the name on the entered credit card and the last four digits on the entered credit card.  But when a blind text-to-speech user clicks on this button, all it says is, "Name of Card CCT, default, Last Four CCT."  Though a sighted person would be able to read what name

appears on the card and the last four numbers of the card, a blind text-to-speech user would have no way to access that information.  Further, if a user wants to use Fare credits to pay for the service, Fare has not properly coded and labeled its software to provide text-to-speech information about the available Fare credits.  Though a sighted person would see the available Fare credits on the payment screen, the text-to-speech technology cannot read this information.  As a result, a blind user using text-to-speech cannot user Fare credits to pay for her trip.

24.     Several individuals with visual impairments have tried to use the Fare app without success.  For example, Plaintiff Demetrius Kouniaris downloaded the Fare software application on or about June 1, 2016.  Mr. Kouniaris had sought to use Fare to attend a meeting at Austin Community College.  He also wanted to use it to get to a doctor's appointment later that week.  During the download process he never encountered any "Terms or Conditions" of its use, nor was he given any opportunity to review or agree to them.  Mr. Kouniaris attempted to use the software, but he was unable to schedule a ride from Fare's taxi service.

25.     Plaintiff Jeanine Lineback downloaded the Fare software application at the end of May 2016.  During the download process she never encountered any "Terms or Conditions" of its use, nor was she given any opportunity to review or agree to them.  She downloaded Fare because she needed a ride home from the Apple campus on Riata Vista Circle.  She made multiple attempts to schedule a trip through Fare that day, but was ultimately unsuccessful.

26.     The Plaintiffs and other blind individuals submitted written inquiries to Fare concerning the accessibility of the mobile device software application, hoping to resolve this matter without litigation.  But Fare failed to explain whether Fare has any concrete plans to make the software accessible, and it has not taken any other meaningful steps to ensure that its

software is accessible. Further, Fare has not given a timeline of when the software might be made accessible.

27.     Plaintiff Aundrea Moore is blind, is a member of the NFBTX, and currently resides in Austin, Texas.  She is aware of discussions about the inaccessibility of the Fare mobile app in NFBTX forums and at recent NFBTX events.  Ms. Moore learned of its inaccessibility during these discussions and was deterred from downloading Fare because she did not want to face the same discrimination others had faced.  On or about May 14, 2016, she attended a party at the home of a friend.  She would have liked to use Fare to go home from the party, but she did not attempt to download it because she knew it would not be accessible to her.

28.     Plaintiff Nevzat Adil is blind, is a member of the NFBTX, and currently resides in Austin, Texas.  He is aware of discussions about the inaccessibility of the Fare mobile app in NFBTX forums and at NFBTX recent events.  Mr. Adil also learned of its inaccessibility from one of his friends.  Mr. Adil was deterred from downloading Fare because he did not want to face the same discrimination others had faced.  Mr. Adil had two doctor's appointments in mid-July 2016 that he would have used Fare to attend, but he did not attempt to download the app because he knew it would not be accessible to him.

29.     When Fare makes it impossible for blind riders to independently use its software application, blind individuals experience several harms. They must arrange alternate transportation that is sometimes more costly, they face the degrading experience of being denied a basic service that is available to all other paying customers, and they face the degrading experience of relying on a sighted person to assist them with a task they could easily perform themselves if the software application was accessible.

30.     Fare is violating basic equal access requirements under both the Americans with Disabilities Act ("ADA") and state law by failing to implement policies and procedures that would prevent or reduce discrimination against blind riders.  Fare and other similar taxi services are a critical transportation option for many blind individuals in Austin, Texas.  Due to distances between destinations and the limitations of public transportation and paratransit, many blind persons must use taxi services to travel from one place to another.  The fact that Fare does not have an accessible software application for blind users, and the fact that this discrimination deters blind individuals including the Plaintiffs from using Fare, means that such persons are denied full and equal access to this critical mode of transportation.

31.     Due to the public's widespread adoption of mobile devices, Fare and other transportation network companies are quickly supplanting traditional taxi companies and becoming the public's primary option for on-demand taxi services.  Fare offers taxi services in Austin and other Texas cities.

32.     Fare is a private entity primarily engaged in the business of transporting people.

33.     Fare provides transportation to the general public on a regular and continuing basis.

34.     Fare does not provide a fixed-route system.

35.     Fare operates a "demand responsive" transportation system.

36.     Fare provides transportation services through a network of drivers who work with Fare under a contractual or other arrangement.

37.     Fare's services include transportation services that involve calling for a vehicle and a driver to take one places.

38.     Fare's operations affect interstate commerce.

10

39.     Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA.    Such discrimination includes discrimination in the provision of taxi and transportation services. Similarly, Texas state law requires full and equal access to all business establishments and places where the public is invited, including vehicles providing taxi services.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT**
**(42 U.S.C. § 12181 *et seq.*)**

40.     Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

41.     Title III of the ADA prohibits discrimination on the basis of disability in the full and equal enjoyment of public transportation services provided by a private entity primarily engaged in the business of transporting people, and whose operations affect commerce. 42 U.S.C. § 12184(a); 49 C.F.R. § 37.5(a), (f).

42.     Fare operates a "demand responsive" transportation system even if it does so by contracting with others to drive.  49 C.F.R. § 37.3.

43.     The ADA prohibits private entities providing specified public transportation from imposing eligibility criteria that screen out or tend to screen out individuals with disabilities from fully enjoying the specified public transportation services provided by the entity, unless such criteria can be shown to be necessary for the provision of the services being offered.  42 U.S.C. § 12184(b)(1); 28 C.F.R. § 36.302(a).

44.     By operating a taxi service that does not allow blind users to independently access its software application, Defendant violates Title III of the ADA because Defendant is utilizing

eligibility criteria that screen out or tend to screen out Plaintiffs and other blind individuals from fully enjoying the Fare taxi service.  42 U.S.C. § 12184(b)(1); 28 C.F.R. § 36.302(a).

45.     It is a violation of Title III for providers of transportation to fail to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12184(b)(2)(A); 49 C.F.R. § 37.5(f).

46.     By failing to modify practices, policies, and procedures to ensure that Fare's software application is accessible to text-to-speech users, Defendant is denying Plaintiffs full and equal access to Fare's taxi services.

47.     Title III regulations prohibit private entities providing taxi services from discriminating by refusing to provide taxi services to people with disabilities who can physically access taxi vehicles. 42 U.S.C. § 12184(b)(4)(B); 49 C.F.R. §§ 37.5(a)-(b), (f), 37.29(c).

48.     Defendant violates Title III of the ADA by refusing to provide transportation services to blind individuals who can physically access Fare vehicles, but cannot access Fare's software application.  Defendant therefore violates Title III of the ADA by denying Plaintiffs full and equal access to the services, facilities, privileges, advantages, and accommodations of vehicles providing the Fare taxi service.

49.     The actions of Defendant were and are in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12181, *et seq.*, and regulations promulgated thereunder. Defendant has failed to take any equitable steps to remedy its discriminatory conduct, and Defendant's violations of the ADA are ongoing. Defendant's unlawful actions deter members of

Plaintiff NFBTX, including Plaintiffs Moore and Adil, from attempting to access the Fare taxi service.   Unless the Court enjoins Defendants from continuing to engage in these unlawful practices, Plaintiffs will continue to suffer irreparable harm.

50.     Plaintiffs are entitled to injunctive relief under 42 U.S.C. § 12188.

## SECOND CAUSE OF ACTION
## VIOLATION OF CHAPTER 121 OF THE TEXAS HUMAN RESOURCES CODE

51.     Plaintiffs incorporate by reference the foregoing allegations as though fully set forth herein.

52.     Plaintiffs bring this cause of action under Chapter 121 of the Texas Human Resources Code.

53.     Defendant is a "public facility" as defined by Texas Human Resources Code § 121.002(5) because it is a common carrier, motor vehicle, or other public conveyance or mode of transportation.

54.     Among other things, Chapter 121 states that "[p]ersons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state."  Texas Human Resources Code § 121.003(a). As described above, Defendant violated this provision when it denied Plaintiffs the use and enjoyment of its facility on the basis of their disability.

55.     Defendant also discriminated against Plaintiffs as defined by Chapter 121 by:

    a.    Denying Plaintiffs admittance to its public facility because of their disability, in violation of Texas Human Resources Code § 121.003(c);

    b.    Denying the use of their assistance device, in violation of Texas Human Resources Code § 121.003(c);

    c.      Refusing to allow them to use its public facility, in violation of Texas Human Resources Code § 121.003(d);

    d.      Adopting a ruse or subterfuge calculated to prevent or discourage them from using or being admitted to a public facility, in violation of Texas Human Resources Code § 121.003(d);

    e.      Failing to make reasonable accommodations to its policies, practices, and procedures, in violation of Texas Human Resources Code § 121.003(d)(2);

    f.      Prohibiting the use of its public facility by a person with a disability who, except for his disability, would fall within the class of people permitted to use the public facility, in violation of Texas Human Resources Code § 121.003(e).

56.    Chapter 121 provides for the recovery of actual and punitive damages.  Chapter 121 sets no cap on such damages, but there is a conclusive presumption that such damages are no less than three hundred dollars ($300) for each violation of the law.  TEX. HUM. RES. CODE § 121.004(b).

57.    Defendant's conduct described above was intentional and taken in disregard of the rights afforded Plaintiffs under state law, and Defendant acted with fraud, malice, or gross negligence.

## PRAYER

Plaintiffs request that the Court:

    a.      Exercise jurisdiction over this action;

    b.      Grant Plaintiffs declaratory relief;

c.     Enter a permanent injunction under federal and state law prohibiting Defendant from continuing to discriminatorily exclude Plaintiffs from its transportation services; affirmatively requiring Defendant to remove any barriers to access to its services; and allowing Plaintiffs to participate in its programs on a basis equal to other persons;

d.     Award Plaintiffs compensatory and punitive damages under state law;

e.     Award Plaintiffs their attorney's fees and litigation expenses under federal law;

f.     Award Plaintiffs all costs expended herein under state and federal law; and

g.     Grant Plaintiffs such other and further relief as may be deemed just, equitable and appropriate by the Court.

Respectfully submitted,

BRIAN EAST
State Bar No. 06360800
LIA S. DAVIS
State Bar No. 24071411
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
Email: beast@drtx.org
Email: ldavis@drtx.org

TIMOTHY ELDER
TRE LEGAL PRACTICE
California State Bar No. 277152
4226 Castanos Street
Fremont, California 94536
(410) 415-3493 (phone)
(888) 718-0617 (fax)
Email: telder@trelegal.com

ATTORNEYS FOR PLAINTIFFS